(112 App. Div. 408)

### KELSEY, Comptroller, v. CHURCH, Surrogate.

(Supreme Court, Appellate Division, Second Department.   April 20, 1906.)

1. TAXATION—TRANSFER TAX—APPOINTMENT OF APPRAISERS—DUTY OF SUR-
    ROGATE.
        Laws 1896, p. 874, c. 908, § 230, declaring that the surrogate, either upon,
    his own motion or on the application of any interested party, including
    the Comptroller of the state, shall by order direct the county treasurer in
    a county in which the office of appraiser is not salaried and in any other
    county an appraiser to fix the fair market value of property of persons
    whose estates shall be subject to the payment of a transfer tax, is manda-
    tory.

2. SAME—APPLICATION FOR APPOINTMENT—SUFFICIENCY.
        Under Laws 1896, p. 874, c. 908, § 230, declaring that the surrogate,
    upon the application of any interested party, including the Comptroller
    of the state, shall require certain persons to fix the fair market value
    of property of persons whose estates shall be subject· to the payment
    of a transfer tax, an application by the Comptroller, made upon a veri-
    fied petition, setting forth all the necessary facts upon information and
    belief, is sufficient.

3. MANDAMUS—COMPELLING ACTION BY SURROGATE—TRANSFER TAX PROCEED-
    ING.
        Under Laws 1896, p. 874, c. 908, § 230, declaring that the surrogate,
    either upon his own motion or upon the application of any interested
    party, including the Comptroller of the state, shall direct the county
    treasurer or an appraiser to fix the value of property of .persons whose
    estates are subject to the payment of the transfer tax, etc., mandamus
    is the proper remedy to require the surrogate to act, even though he has
    erroneously determined that he has no jurisdiction.

.Appeal from Special Term.

Application by Otto Kelsey, as Comptroller of the state of New
York, against James C. Church, as surrogate of Kings county, for a
writ of mandamus to compel respondent to appoint an appraiser in a
transfer tax proceeding.   From an order denying the application, ap-
plicant appeals.   Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS,
HOOKER, and MILLER, JJ.

Jabish Holmes, Jr., for appellant.
William P. Pickett, for respondent.

MILLER, J.   The State Comptroller appeals from an order of the
Special Term denying an application for a peremptory writ of manda-
mus, requiring the surrogate of Kings county to make an order ap-
pointing an appraiser in a transfer tax proceeding attempted to be
instituted by the appellant in said county.   The statute pursuant to
which the learned surrogate was requested to act (Laws 1896, p. 874,
c. 908, § 230, as amended) provides:

"The surrogate, either upon his own motion, or upon the application of any
interested party, including the Comptroller of the state of New York, shall
by order direct the county treasurer in a county in which the office of appraiser
is not salaried, and in any other county the person or one of such persons
so designated as appraisers to fix the fair market value of property of persons
whose estates shall be subject to the payment of any tax imposed by this
article."

At the threshold of this inquiry, it is important to determine whether this provision is mandatory. It is well settled that, where a statute clothes a public officer with power to do an act which concerns the public interests, the execution of the power may be insisted upon as a duty, even though the language of the statute be permissive only. People ex rel. The Otsego County Bank v. Supervisors, 51 N. Y. 401; People ex rel. Reynolds v. Common Council, 140 N. Y. 300, 35 N. E. 485, 37 Am. St. Rep. 563. The language of the statute under consideration is imperative. The portion of the statute quoted supra was taken from section 11, c. 399, p. 818, Laws 1892, but with a significant omission. As the statute originally was, it provided:

"The surrogate, upon the application of any interested party, * * * shall, as often and whenever occasion may require, appoint a competent person as appraiser * * *."

The Court of Appeals said, in Matter of Westurn's Estate, 152 N. Y. 93, 46 N. E. 315, that this statute left it to the sound discretion of the surrogate to determine when the power should be exercised; and the present case furnishes a concrete illustration of the reason, founded upon experience, that doubtless moved the Legislature to eliminate the words affording ground for this construction. This statute provides the machinery for the assessment and collection of the tax, and makes the surrogate of each county a part of it. He is required, in the first instance, to appoint an appraiser. Upon the report of the appraiser, and any other proof which may be before him, he is required forthwith, as of course, to determine the value of the estate and the amount of tax to which it is liable. See section 232, c. 908, p. 875, Laws 1896. It is plain that up to this point he acts as an assessing officer merely, of course judicially, the same as every assessor acts. From the initial order imposing the tax, an appeal lies, in the first instance, to the surrogate, who thereupon is required to review his own acts as such assessing officer. See section 232. The initial step in the proceeding is the appointment of an appraiser, and the surrogate is required to make such appointment, either on his own motion, or upon the application of any interested party, including the State Comptroller. He must act upon his own motion when he learns of facts affording reason to believe that such proceeding ought to be instituted; upon the application of an interested party when a proper application is made. The reason for making the surrogate the assessing officer, and requiring him to act upon his own motion, is plain. No other officer in the state has the same opportunity to learn when a transfer tax ought to be imposed, as all resident estates, and nonresident estates in which it is necessary to apply for ancillary letters, become of record in his office; and although it was said in Matter of O'Donohue, 44 App. Div. 186, 59 N. Y. Supp. 1087, 60 N. Y. Supp. 690, that "the jurisdiction of the surrogate to appoint an appraiser is one that may be exercised with or without a petition and of his own motion, whenever in the sound exercise of his discretion he deems it proper to do so" (the "exercise of discretion" evidently referring to action upon his own motion), I think the duty to act in either case is imperative Of course, before acting on his own motion, he must determine whether

the facts within his official knowledge are such as to require action, and before acting upon the application of an interested party he must determine whether a proper application has been made; but his duty to act is just as imperative in either case as is the duty of local assessors to obey the command of the statute respecting the performance of their duty, and there is no more reason for saying that he has a discretion in the matter than there is for saying that any officer charged with the performance of a public duty has a discretion whether he will discharge such duty.

Was a proper application made? The application was made upon a verified petition, which sets forth every fact upon which the jurisdiction of the surrogate to act depended. To be sure the allegations are upon information and belief, but this is good pleading, and is expressly authorized by the Code of Civil Procedure, whether in an action or in a proceeding in Surrogate's Court; and surely more cannot be required respecting the petition for the institution of this proceeding than is required to institute proceedings in the Surrogate's Court. The petitions made by the officer charged by law with the duty of collecting this tax. He cannot know of his own knowledge as to the taxability of these estates, and the very purpose of these proceedings, as the law plainly contemplates, is to ascertain the fact. From the affidavit of the learned surrogate submitted upon this motion, it appears that he is of opinion that oppression to estates may result unless the State Comptroller is required to establish in advance the facts to ascertain which the proceeding is required to be instituted. The fact that some other officer may not understand his duty furnishes no reason for disregarding the statute. But the proceeding need involve no expense to the estate. The appraiser merely ascertains the facts, and reports them with the evidence to the surrogate, and the statute guards against the unlawful imposition of a tax, and gives the estate full and complete protection. Those who desire to evade paying what the law imposes in return for the protection of their persons and property afforded by the state may call that oppression. The danger is not the one feared by the learned surrogate, but that estates legally taxable will escape taxation; respecting resident estates, that, owing to delay, the estate may be wasted or distributed without application to the surrogate, or that it may become difficult to ascertain the facts and enforce payment of the tax; respecting nonresident estates, that property subject to tax may be removed from the state without the payment of the tax, except as the transfer of securities of decedents without the payment of the tax may be prevented by another provision of the statute. This danger can only be minimized by extreme vigilance on the part of officers charged with the duty of collecting the tax, and by a faithful observance of duty on the part of officers charged with its assessment. The law contemplates the institution of the proceeding upon the application of the Comptroller. Manifestly, it is impracticable, if not impossible, for him to do more than was done in this case, and, if the petition presented by him was not sufficient, the institution of the proceeding must be left to the volition of representatives of estates. This will be a kindness only to those who desire to escape

taxation, because experience has shown that in counties where the institution of transfer tax proceedings has been delayed by the surrogate, persons ignorant of the provisions of the law have been subjected to penalties. which no one can remit, often larger than the tax. The exact form of petition used in this case was held good on direct attack in the Matter of O'Donohue, supra, and there can be no doubt that a proper application was made to the surrogate, requiring him to obey the command of the statute.

Is mandamus the proper remedy? No appeal lies from an ex parte order, because no effectual judgment or order could be made on the determination of the appeal, except in the nature of mandamus. Matter of Johnson, 27 Hun, 538; People v. Common Council, 30 Hun, 636; Matter of Notingham, 88 Hun, 443, 34 N. Y. Supp. 404; Hayes v. Consolidated Gas Co., 143 N. Y. 641, 37 N. E. 648. The function of mandamus is to compel action, and not to review action taken. It can control the performance of a ministerial duty. It can require, but cannot control, the exercise of judgment or discretion. These propositions are elemental. The learned court at Special Term was of the opinion that mandamus would not lie because the surrogate had a judicial discretion in the matter of granting these orders. This proposition, if I am correct, is untenable. He has no discretion, but of course is required to exercise judgment in determining whether a case is presented requiring him to act. If his refusal to act, upon the erroneous determination that he had not jurisdiction, cannot be corrected by mandamus, then I conceive that there can be few cases in which a judicial officer can be compelled to act, because he can usually say that he had to exercise judgment in determining whether a case was presented requiring action, and that he had exercised such judgment in determining that no action was required. In this case the refusal of the surrogate to act presents nothing for review. The petitioner seeks to compel him to act, not to control his action. An officer cannot refuse to discharge his duty, and then defeat mandamus by saying that he determined that no case was presented calling upon him for the discharge of such duty. What the petitioner seeks is a determination of this matter upon the merits. Of course, if, after the institution of the proper proceedings, the surrogate in determining the matter upon the merits should conclude that he had not jurisdiction to assess a tax, that conclusion could be reviewed only in the manner pointed out by the statute, to wit, by an appeal to the surrogate, and from his order on such appeal to the Appellate Division. No case has been called to our attention in which mandamus has been refused where the officer has refused to act upon the erroneous assertion of want of jurisdiction; on the contrary, there is plenty of authority to the effect that the erroneous determination of want of jurisdiction preliminary to acting at all does not defeat a mandamus to compel a judicial officer to act. That mandamus in such case was the proper remedy was plainly stated by the Court of Appeals in Hayes v. Consolidated Gas Co., supra, and by Judge Martin, speaking for the General Term of the Fourth department, in the Matter of Nottingham, supra. To be sure these expressions were obitor, but there is controlling authority in this

state on the proposition. See People ex rel. Allen v. Murray (Super. N. Y.) 23 N. Y. Supp. 160, affirmed (Super Ct.) 21 N. Y. Supp. 797; 138 N. Y. 635, 33 N. E. 1084. The distinction between the erroneous determination of a question of jurisdiction preliminary to hearing the case at all and such erroneous determination after a hearing upon the merits is made plain by a comparison of the case last cited and the case of Matter of McBride, 72 Hun, 394, 25 N. Y. Supp. 431. In the latter case the sole remedy is by appeal; in the former, mandamus will lie to compel action. See, also, Queen v. Brown, 7 Ellis & Black. 757; Regina v. Mayor, 5 L. R. Ct. of Q. B. 256.

As there are no facts in dispute, a peremptory writ should issue. The order appealed from should be reversed, without costs, and the application for a peremptory writ of mandamus granted, without costs. All concur.